**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DARRYL ALFORD, | CASE NO. 1:12-cv-2931 |
| Petitioner, | JUDGE SOLOMON OLIVER, JR. |
| v. | MAGISTRATE JUDGE GREG WHITE |
| BARRY GOODRICH, Warden | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner, Darryl Alford ("Alford"), challenges the constitutionality of his conviction in the case of *State v. Alford*, Cuyahoga County Court of Common Pleas Case No. CR-05-469026-A. Alford, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on November 28, 2012. On February 28, 2013, Warden Barry Goodrich ("Respondent") filed his Answer/Return of Writ. (ECF No. 7.) Alford filed a Traverse on March 22, 2013. (ECF No. 8.) For reasons set forth in detail below, it is recommended that Alford's petition be DISMISSED as time barred.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Alford's conviction as follows:

[*P2] Alford was indicted in 2005 in a six-count indictment as follows: Count 1 charged failure to comply with an order or signal of a police officer with a furthermore clause that the operation of the motor vehicle caused a substantial risk of serious physical harm to person or property; Count 2 charged attempted murder (of victim George Harris) with one- and three-year firearm specifications and a body armor specification; Count 3 charged felonious assault (of victim George Harris) with one- and three-year firearm specifications and a body armor specification; Count 4 charged attempted murder (of victim Jennifer Davis) with one- and three-year firearm specifications and a body armor specification; Count 5 charged felonious assault (of victim Jennifer Davis) with one- and three-year firearm specifications and a body armor specification; and Count 6 charged carrying a concealed weapon. The state also petitioned the court for forfeiture of the seized contraband.

[*P3] After extensive pretrial negotiations, Alford pleaded guilty to failure to comply with an order or signal of a police officer as charged in Count 1, and felonious assault with one-year firearm specifications and body armor specifications as charged in Counts 3 and 5. The remaining counts and specifications were nolled. The trial court sentenced Alford to 12 years in prison.

[*P4] Alford appealed *pro se*, but the appeal was dismissed for failure to file the record. A second *pro se* appeal was dismissed as untimely.

[*P5] Alford subsequently filed a motion to withdraw his guilty plea, which the trial court denied. This appeal followed and this court granted Alford the preparation of the transcript at the state's expense; the transcript was filed and has been considered in determining this appeal. In his sole assignment of error, Alford contends that the trial court erred by not granting his postsentence motion to vacate his plea.

***

[*P6] The facts that led to the charges are as follows. Alford worked at New York Frozen Foods in Bedford; his ex-girlfriend, Jennifer Davis, also worked there. On the day of the incident, Alford approached Davis in the plant to talk to her. Davis told Alford that she did not want to talk to him and asked him to move away from her; he did not comply.

[*P7] Davis walked away from Alford, but he followed her. Davis found her supervisor and advised him of the situation. Davis then returned to her work area, where she was again approached by Alford; he told her that if he got fired he would kill her.

[*P8] The supervisor paged Alford so that he could speak with him, but was

>    advised by another supervisor that Alford had left on sick leave. Davis's
>    supervisor told her that Alford was gone and Davis told the supervisor of Alford's
>    threat. The police were contacted so that a report could be made. The police
>    arrived at the plant, and while taking Davis's statement, saw Alford's vehicle in
>    the vicinity of the plant. Alford, who was driving the car, parked in the lot of a
>    nearby business, exited the car dressed in camouflage with a black object in his
>    hands. He cut through a wooded area that led to the rear of New York Frozen
>    Foods.
>
>    [*P9] Alford entered the plant and fired shots; some, but not all, of the employees
>    were evacuated from the building. Employee George Harris remained in the
>    building. Alford believed that Davis had ended her relationship with him to be
>    with Harris. Alford confronted Harris, pulled a gun on him, and told him he was
>    going to shoot Davis after he "finished" with him. Harris scuffled with Alford
>    and was able to restrain him until the police apprehended him.
>
>    [*P10] Over 20 shotgun shells and a body armor were recovered from the scene
>    and/or from Alford's person. A rifle, machete, shotgun ammunition, and rifle
>    ammunition were recovered from Alford's car.

*State v. Alford*, 2010-Ohio-4130, 2010 Ohio App. LEXIS 3492 (Ohio Ct. App., Sept. 2, 2010)

(footnotes omitted).

## II. Procedural History

### A. Conviction

On August 5, 2005, a Cuyahoga County Grand Jury charged Alford with one count of failure to comply with the order or signal of a police officer in violation of Ohio Revised Code ("O.R.C.") § 2921.331, two counts of attempted murder in violation of O.R.C. §§ 2923.02 & 2903.02 together with firearm and body armor specifications, two counts of felonious assault in violation of O.R.C. § 2903.11 together with firearm and body armor specifications, and one count of carrying a concealed weapon in violation of O.R.C. § 2923.12. (ECF No. 7-2, Exh. 2.) On October 27, 2005, Alford, with the assistance of counsel Walter Camino, entered a plea of guilty to the two counts of felonious assault with one year firearm and body armor specifications,

-3-

as well as to the charge of failing to comply with the order or signal of a police officer. (ECF No. 7-4, Exh. 4.) The remaining charges were nolled. *Id.* Alford was sentenced to an aggregate prison term of twelve years. *Id.*

**B. Direct Appeal**

On November 14, 2005, Alford, *pro se*, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"). (ECF No. 7-8, Exh. 8.) After being dismissed and then reinstated, Alford's appeal was dismissed on March 30, 2006 for failure to file the record. (ECF No. 7, Exhs. 7 & 9.)

In the interim, Alford had filed a second appeal on March 7, 2006 (ECF No. 7-11, Exh. 11), which was dismissed as untimely pursuant to Ohio Appellate Rules 4 & 5(A) on May 18, 2006. (ECF No. 7-12, Exh. 12.)

There is no indication that a direct appeal was taken to the Supreme Court of Ohio.

**C. State Habeas Petition**

On September 5, 2008, Alford, *pro se*, filed a petition for a writ of habeas corpus in the Ashtabula County Court of Common Pleas. (ECF No. No. 7-13, Exh. 13.) On May 11, 2009, the petition was dismissed as Alford failed to certify a statement of account by the institutional cashier as mandated by O.R.C. § 2969.25. (ECF No. 14, Exh. 14.) Furthermore, the court found that Alford could have raised all the relevant issues on direct appeal. *Id.*

**D. Motion to Withdraw Guilty Plea**

On May 26, 2009, Alford, *pro se*, filed a motion to withdraw his guilty plea. (ECF No. 7-15, Exh. 15.) The motion was denied on August 24, 2009. (ECF No. 7-17, Exh. 17.)

On September 11, 2009, Alford, *pro se*, filed a Notice of Appeal from the denial of his

motion to withdraw his guilty plea. (ECF No. 7-20, Exh. 20.) On October 13, 2009, attorney John B. Gibbons was appointed as counsel for Alford. (ECF No. 7-19, Exh. 19.) Alford argued that the trial court erred by failing to grant his motion to withdraw his guilty plea. He maintained he should have been provided substitute counsel after he expressed dissatisfaction with his then counsel's performance. (ECF No. 7-21, Exh. 21 at 11.)

On September 2, 2011, the state appellate court affirmed Alford's conviction. *Alford*, 2010-Ohio-4130 at ¶19. However, the court also found that the trial court, while advising Alford on the record about post-release control, "did not adequately set forth the post-release control advisements in its judgment entry" and remanded for resentencing in accordance with *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958 (Ohio 2009). *Id*.

There is no indication that a direct appeal was taken to the Supreme Court of Ohio.

On October 15, 2010, Alford, represented by counsel, was resentenced to the same aggregate twelve year term with credit for time served. (ECF No. 7-28, Exh. 28.) The new judgment entry specifically included the notification regarding post-release control mandated by the state appellate court. *Id*. There was no ensuing appeal.

**E. Federal Habeas Petition**[1]

On November 28, 2012, Alford filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> GROUND ONE: (1) The Petitioners motion for delayed appeal should be granted and his motion to vacate his guilty pleas should be granted, C.O.A. No. 98130 petitioner was never notified by the Clerk of Courts an[d] the clerk was never

---

[1] Alford filed numerous additional motions before the state courts, as set out in Respondent's Answer. (ECF No. 7 at 6-12.) As these filings have no effect on the statute of limitations, they need not be repeated herein.

ordered by the court to notify the petitioner. (2) The denial from the C.O.A. in his appeal was his sentence was never voided out by that Court. No. 95946, so he could not withdraw his guilty plea in accordance with *State v. Boswell* 2009, however the C.O.A. had to have voided his sentence from 2005 because of the P.R.C. sentencing error, because he was convicted before July 11th 2006, a *de novo* hearing was mandatory in accordance with *State v. Singleton*, which was the court ruling.

GROUND TWO: Under the Constitution, due process and equal protection of the 14th [A]mendment and the Double Jeopardy Clause of the 5th [A]mendment attach to an [sic] completed expired sentence, once that sentence has been completed by the petitioner and any actions of the trial court to <u>re-sentence</u> the petitioner to a completed void sentence which by law must contain two mandatory requirements namely P.R.C. and the Drivers license suspension for a three years period, violates the Constitution. To re-sentence the petitioner the ... same sentence when both were required to be told to the petitioner at the criminal rule 11 hearing in 2005 and at the 2010, would be a after fact notification. Re-sentencing was not to be an option.

GROUND THREE: A bias [sic] Judge [Timothy] McGinty tried this case and two prosecutors showed total misconduct in this case.

GROUND FOUR: The petitioner filed a motion for a Criminal rule 55 records violation, on 10/13/2010, just before the re[-]sentencing was held, a hearing was held on this issue and the court ruled it would be corrected, however to this day it has not. Because in my opinion to cover up what the trial court[']s total disregard for the petitioner[']s Constitutional and Civil rights and the total disregard for the rule of law by the two prosecutor[s] of (1) not giving the petitioner any discovery or bill of particular[s] even though these items were filed for one month before trial. (2) forcing him to appear in front of the jury in an orange prison jump suit (3) using the word (NIGGA) constantly in open court on the record and so many more errors. That this court (did not even docket a trial ever existed) CR-5-469026-A trial date 10/26/2005 and 10/27/2005.

(ECF No. 1.)

### III. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

**A. One-Year Limitation**

In the instant action, Respondent asserts that Alford's petition is time-barred because he did not file within the one-year limitations period. Respondent contends that Alford's conviction became final on May 15, 2006, forty-five (45) days after his appeal was dismissed and the time to file an appeal with the Supreme Court of Ohio expired.[2] (ECF No. 7 at 20-21.)

---

[2] Ohio Supreme Court Practice Rule II § 2 requires appeals to be perfected within 45 days. Here, a timely appeal would have been due on May 13, 2006. However, since that date fell on a Saturday, Alford had until May 15, 2006.

The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*[3]

Only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 3 (2007); *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905, *2, Case No. 2:08cv1168 (S.D. Ohio Jan. 8, 2009). Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling. *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

As Alford did not file an appeal with the Supreme Court of Ohio from the dismissal of his direct appeal, the Court agrees that Alford's conviction became final on May 15, 2006 – 45 days after his direct appeal was dismissed by the state appellate court. While Alford had filed a second

---

[3] An application for state habeas review is an application for state post-conviction review or other collateral review within the meaning of the AEDPA. *See Abela v. Martin*, 348 F.3d 164, 170 (6th Cir. 2003), *overruled on other grounds as stated in Sanders v. Bobby*, 2008 U.S. Dist. LEXIS 7248 (N.D. Ohio 2008).

appeal on March 7, 2006, that appeal was dismissed on untimeliness grounds and cannot be construed as properly filed. (ECF No. 7-11, Exhs. 11 & 12.) As such, it did not toll the statute of limitations.[4] Without the benefit of tolling, Alford's habeas petition had to be filed no later than May 15, 2007. Alford did not file his state petition for a writ of habeas corpus until September 5, 2008. (ECF No. No. 7-13, Exh. 13.) However, even a timely filed state post-conviction matter cannot serve to toll a statute of limitations which has already expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted). As such, neither the state habeas petition nor any of Alford's many subsequent filings served to toll the already expired statute of limitations.

Therefore, unless equitable tolling is appropriate or Alford is entitled to begin calculating the statute of limitations from an alternative date, his petition should be dismissed as time-barred.

**B. Factual Predicate**

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if the factual predicate of the claim or claims was not earlier discovered by a petitioner acting with due diligence.

Alford does not argue that the factual predicate of his claims were not discovered until a later date. He does, however, appear to argue that his original sentence was void because it was

---

[4] Even if this second untimely appeal tolled the statute of limitations, it would only have delayed the start until July 3, 2006.

not proper under state law. (ECF No. 8.) Although Alford does not explain how this assertion applies to the statute of limitations, the pleadings of *pro se* prisoners are liberally construed and held to a less stringent standard. *See, e.g., McNeil v. United States*, 508 U.S. 106, 113 (1993); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). The Court will construe Alford's briefs as raising two related arguments: (1) the error in his original sentence rendered it void and, therefore, the statute of limitations did not begin until any and all errors were corrected; and, (2) the date of his re-sentencing is the operative date from which the statute of limitations must be calculated.

First, this Court has previously rejected arguments that a void sentence means that the habeas clock has simply never started. *See, e.g., Hackett v. Bradshaw*, 2012 U.S. Dist. LEXIS 184587 (N.D. Ohio, Dec. 4, 2012). In *Frazier v. Moore*, 252 Fed. App'x. 1 (6th Cir. 2007), the Sixth Circuit found that a defective state court judgment "does not lead to the conclusion that there was no judgment for the purpose of [AEDPA]'s one year statute of limitations. Many of the petitions cognizable on federal habeas review challenge the validity of the underlying state court judgment. The fact that the state court judgment may have been procured in violation of state or federal law does not, however, render the judgment null under § 2244(d) [of the AEDPA]." *Id*. at 5-6. As noted by the *Frazier* court, "[i]f a judgment that was procured by a procedure that violated federal constitutional rights were sufficient to render a petitioner not in custody 'pursuant to the judgment of a state court' for the purpose of §§ 2244(d) and 2254, then the habeas regime embodied in these provisions would be substantially undermined." Recently, the Sixth Circuit confirmed that "[n]othing in the federal habeas statute requires that a judgment be valid under state

-10-

law" before the statute of limitations begins to run. *Mackey v. Warden, Leb. Corr. Inst.*, 525 Fed. Appx. 357, 361 (6th Cir. 2013). The *Mackey* court reaffirmed its prior decision in *Frazier*. *Id.*

Turning to the second argument, there is some authority that could be interpreted as supporting Alford's position that the re-sentencing is the operative date under the AEDPA. *See, e.g., Burton v. Stewart*, 549 U.S. 147, 156-157 (2007) (rejecting petitioner's argument that if he had not filed an earlier petition and instead waited until state review of his sentencing claims were complete, he risked losing the opportunity to challenge his conviction in federal court due to AEDPA's 1-year statute of limitations). The *Burton* court explained that the petitioner "misreads AEDPA," and that "final judgment in a criminal case means sentence" *Id*. *citing Berman v. United States*, 302 U.S. 211, 212 (1937). Accordingly, the *Burton* court found that the limitations period did not begin until both petitioner's conviction *and* sentence became final by the conclusion of direct review or the expiration of the time for seeking such review. *Id.*; *accord Rashad v. Lafler*, 675 F.3d 564, 568 (6th Cir. 2012) ("[*Burton*], it seems to us, shows that the judgment becomes final after direct review of the new sentence.")

Respondent argued in his brief that the above cases are distinguishable and points out that the issue at bar – whether a re-sentencing by an Ohio court for the imposition of post-release control triggers a new one-year statute of limitations – was recently submitted to the Sixth Circuit. (ECF No. 7 at 25 n. 6.) Since then, the Sixth Circuit has rendered an opinion. *See Mackey v. Warden, Leb. Corr. Inst.*, 525 Fed. Appx. 357 (6th Cir. 2013). The *Mackey* decision also involved a petitioner that had been sentenced years earlier (in 1998), but was not informed that he would be subject to mandatory post-release control at the end of his prison term. 525 Fed. App'x at 358. Over a decade later, the petitioner filed a motion for resentencing based on the lack of notice

regarding the imposition of post-release control. *Id.* at 359. The common pleas court granted the motion and resentenced the petitioner *de novo* on February 4, 2011. *Id.* Nonetheless, the Sixth Circuit concluded that the 2011 resentencing did not restart the statute of limitations explaining as follows:

> Mackey argues that his February 2011 *de novo* resentencing is the correct and only starting point from which the federal habeas statute of limitations can run because the 2011 sentence is the only sentence applicable to him. [Pet. Br. 39-40]. We disagree. Assuming that the state court sentencing date is the relevant date for purposes of determining the federal habeas statute of limitations under § 2244(d)(1)(A), *Burton v. Stewart*, 549 U.S. 147, 156, 127 S. Ct. 793, 166 L. Ed. 2d 628 (2007), the [common pleas court] CP was only able to resentence *Mackey* on February 4, 2011 to impose post-release controls. Therefore, Mackey's federal habeas statute of limitations still runs from his 1998 sentence.
>
> ***
>
> Here, Ohio law dictates that Mackey's federal habeas statute of limitations runs from his 1998 sentence. Under the [Ohio Supreme Court] OSC precedent in *Fischer* and its progeny, the CP was able to resentence Mackey only to impose post-release controls on February 4, 2011. *Fischer*, 128 Ohio St. 3d at ¶ 29, 942 N.E.2d at ¶ 29; *State v. Carr*, 2012 Ohio 1850, 2012 WL 1484205, at *3 (Ohio Ct. App. 2012) (citing *Fischer* to state that the scope of a resentencing hearing to correct an original sentence that omitted post-release controls is limited to imposition of those post-release controls). For the purpose of determining the federal habeas statute of limitations under § 2244(d)(1)(A), the 2011 sentence was *de novo* only as to the imposition of post-release controls. Therefore, the federal district court properly dismissed Mackey's 2009 habeas petition because none of his fifteen grounds for relief claimed that the imposition of post-release controls in 2011 was contrary to federal law.
>
> In the alternative, Mackey relies on *Burton* and *Rashad v. Lafler*, 675 F.3d 564 (6th Cir. 2012) to argue that even if the 1998 judgment were operative for § 2244 purposes, the CP reset the federal habeas statute of limitations when it resentenced him in 2011. [Pet. Br. 48; Pet. Ltr.]. In both *Burton* and *Rashad*, the petitioners' one-year federal habeas statutes of limitations ran from their state court resentencing dates, not their original sentencing dates. *Burton*, 549 U.S. at 156; *Rashad*, 675 F.3d at 568. Although the habeas petitioners in *Burton* and *Rashad* were also resentenced in state court, those cases are materially distinguishable from this case. Both Burton and Rashad had obtained appellate vacation of their sentences in direct criminal appeals on the merits while proceeding as

> defendant-appellants in their respective state court systems and were subsequently resentenced on remand. *Burton*, 549 U.S. at 150; *Rashad*, 675 F.3d at 566-67. Mackey, on the other hand, obtained a *de novo* resentencing to remedy a technical error.
>
> Because Mackey's *de novo* resentencing did not affect the federal habeas statute of limitations under § 2244(d)(1)(A), the federal district did not abuse its discretion when it denied Mackey's Rule 59(e) motion. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009) (stating that we review a district court's disposition regarding a motion to alter judgment pursuant to Rule 59(e) for an abuse of discretion).
>
> Although AEDPA requires us to deny Mackey's federal habeas petition on statute of limitations grounds, we are deeply disturbed by the facts of this case. *** Although we sympathize with Mackey's position, we are bound by AEDPA's statute of limitations to deny his petition.

*Mackey*, 525 Fed. App'x at 362-63 (footnotes omitted).

In *Mackey*, the petitioner received a *de novo* resentencing, at which time the trial court imposed post-release control *and* effectively reduced the original sentence by ordering concurrent instead of consecutive sentences. 525 Fed. App'x at 359. Unlike in *Mackey*, Alford received the same sentence as originally imposed, except that he was notified in the Judgment Entry that he was subject to post-release control. As in *Mackey*, Alford obtained a *de novo* resentencing only to remedy a technical error. If anything, Alford's resentencing constituted a less significant change than the petitioner in *Mackey*. Therefore, *Mackey* controls the instant action.[5] Restarting the

---

[5] This Court is aware that Alford was resentenced based on *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958 (Ohio 2009) ("For criminal sentences imposed prior to July 11, 2006, in which a trial court failed to properly impose postrelease control, trial courts shall conduct a de novo sentencing hearing in accordance with decisions of the Supreme Court of Ohio"). The Court is also cognizant of the fact that *Singleton* was overruled just a few months after Alford's resentencing by *State v. Fischer*, 128 Ohio St. 3d 92, 103, 2010-Ohio-6238, 942 N.E.2d 332 at n. 3 (Ohio 2010). The latter decision was controlling at the time the petitioner in *Mackey* was sentenced. While this distinction may impact whether a resentencing is properly characterized as *de novo* under Ohio law, it does not alter the fundamental holding of *Mackey* – that

-13-

AEDPA statute of limitations after a resentencing to correct technical sentencing errors – errors without federal constitutional ramifications – would undermine the provisions of the AEDPA and resurrect claims that could have been raised years earlier.

**C.     Equitable Tolling**

Finally, the Court finds that equitable tolling is not appropriate. Alford did not make an equitable tolling argument after Respondent raised the statute of limitations defense. *See, e.g., Pace*, 544 U.S. at 418 (holding that a petitioner bears the burden of proving that equitable tolling is applicable). In order to be entitled to equitable tolling, Alford has the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id*.; *see also Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). A court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights." *Vroman*, 346 F.3d at 605, *quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *accord Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Garrison v. Warren Corr. Inst.*, 1999 U.S. App. LEXIS 13314 (6th Cir. Jun. 10, 1999).

Alford has failed to meet his burden.

**D.     Actual Innocence**

In his Traverse, Alford claims that he is actually innocent of the charges. (ECF No. 8 at 1.) "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (*quoting Mabry v. Johnson*, 467 U.S. 504, 508 (1984)); *cf. See,*

---

resentencings obtained on collateral review to correct technical errors simply do not affect the federal habeas statute of limitations where the time to file already expired.

-14-

*e.g., Machibroda v. United States*, 368 U.S. 487, 493 (1962) (observing that a guilty plea induced by false threats or promises is subject to a collateral attack).[6] However, in *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005), it was held that "equitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate." 395 F.3d at 599 (following *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1998)). "A petitioner may claim actual innocence for the purposes of equitable tolling, even if his conviction was the result of a plea." *Connolly v. Howes*, 304 Fed. Appx. 412, 417 (6th Cir. 2008) (*citing Bousley*, 523 U.S. at 623; *Waucaush v. United States*, 380 F.3d 251, 258 (6th Cir. 2004) (finding petitioner actually innocent of charge to which he pled guilty). In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 298.

Here, however, Alford has not presented this Court with any new reliable evidence. Instead, Alford merely makes some vague assertions about how one of the victims allegedly reported only one instance of threatening conduct to the police. (ECF No. 8.) As such, there is no basis for this Court to consider Alford's time-barred claims.

---

[6] Furthermore, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley*, 523 U.S. at 621. "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*. (*quoting United States v. Timmreck*, 441 U.S. 780, 784 (1979)). By failing to challenge the validity of a guilty plea on direct appeal, a petitioner procedurally defaults a claim of a defective guilty plea. *Id*. (finding that petitioner, who only challenged his sentence on direct appeal, procedurally defaulted on a challenge to the validity of his guilty plea). Alford never completed a full round of direct review challenging the validity of his guilty plea and his claim is arguably procedurally defaulted. Nonetheless, the Court declines to address this issue given that the petition is time-barred.

### IV. Conclusion

For the foregoing reasons, it is recommended that this matter be DISMISSED as time barred.

/s/ *Greg White*
U.S. Magistrate Judge

Date: December 6, 2013

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**